No. 1-95-0544 

RICHARD CANNELLA, GERALD A. ) APPEAL FROM THE
BRIER, EDWARD W. BRZINSKI, ) CIRCUIT COURT OF
GEORGE FISCHER, WILLIAM D. ) COOK COUNTY
GOODMAN, RUSSELL C. HARVEY, )
JOSEPH M. HOLWELL, WALTER J. )
KLIMEK, JOHN PENTZ, ANTHONY )
OLEYNICHAK, RICHARD RYAN, )
THOMAS O. SPARROW, WILLIAM )
STANTON, ANTHONY SICILLIAN, )
SALVATORE ZAMBUTO, JOSEPH ) 
MILLER, ) No. 86 CH 5814
 ) 
 Plaintiffs-Appellees, )
 )
 v. )
 )
THE VILLAGE OF BRIDGEVIEW, ) THE HONORABLE
 ) JOHN N. HOURIHANE
 Defendant-Appellant. ) JUDGE PRESIDING.

 JUSTICE COUSINS delivered the opinion of the court:
 Plaintiffs, former and present police officers of the
Village of Bridgeview (defendant), filed a two-count complaint
against defendant seeking declaratory relief and damages related
to a claim for 15 minutes of overtime compensation for attendance
at daily roll call. Count I of the second amended complaint
sought damages for officers who were employed by the village at
the time of its filing. Count II sought damages for former
police officers. On July 30, 1993, the trial court entered a
judgment order finding defendant liable to the plaintiffs for
overtime compensation for their attendance at patrol division
roll call. Defendant appeals, contending that: (1) the doctrine
of laches and waiver preclude plaintiffs from claiming
entitlement to overtime compensation for roll call; (2) there was
no prior appropriation of monies to pay overtime for roll call;
(3) there was no contract between the police officers and the
village during the relevant time period; (4) plaintiffs did not
work in excess of eight hours because meal time was not included
as work time; (5) the trial court erred by not granting summary
judgment against Kenneth Osterman because Osterman released the
village from any and all claims arising from his employment; and
(6) the court erred by not granting summary judgment against
plaintiffs because plaintiffs refiled their claim on more than
one occasion, in violation of section 13-217 of the Illinois 
Code of Civil Procedure. 735 ILCS 5/13-217 (West 1992).
BACKGROUND
 In 1971, police department general order 71-10, entitled
"Reporting Time for All Roll Calls," was implemented and stated:
 "1. All members of this command shall report for duty 15
 minutes prior to starting time. Example: 1st Watch shall
 report at 23.45 hours, 2nd Watch shall report at 15.45 hours
 and 3rd Watch shall report at 0745 hours. All Watch
 Commanders shall conduct a 15-minute roll call and all
 personnel report to 'his or her' assignments on the hour.
 2. Watch commanders shall set an example by reporting at
 the prescribed time."
In 1974, the Village of Bridgeview passed an ordinance that
included a provision that police officer employees of the village
would be entitled to overtime pay for hours worked beyond the
eight-hour day. The ordinance further provided that such work
must be approved by the department head. In September 1975, the
ordinance was amended to provide:
 "Any duties required by the head of any department or any
 member of that department to be performed in off-duty
 periods shall be classified as overtime work and shall be
 compensated for in the manner above prescribed."
Stanley Sarbarneck was chief of police for Bridgeview from 1971
until 1983. At that time, most of the police officer employees
were "part time" employees. Chief Sarbarneck testified that the
officers were required to be present for roll call. Roll call
was used for training, reports, duty assignments, and bulletins
as to things to watch during the tour of duty.
 After the roll call was completed, the tour of duty of the
officers consisted of eight hours. There were no written
directives authorizing compensation or time off for missed or
interrupted meal periods. Officer Kenneth Osterman testified that
meal periods were interrupted more frequently than not. He was
never informed of the existence of any procedure for obtaining
compensation or additional time because of a missed or
interrupted meal period. 
 Chief Sarbarneck testified he participated in the
preparation of the police department budgets during his tenure.
Each year the budgets included money for payment of overtime.
There were no separate line items for overtime. Sarbarneck could
not recall the numbers that were in the budgets, stating he would
only be "guessing or lying" if he were to state what those
numbers might have been.
 Plaintiffs were hired at varying dates from 1965 to 1982. In
October 1983, after the retirement of Chief Sarbarneck, Kenneth
Osterman became the chief of police for Bridgeview, a position he
held until January 1987. Prior to that time, he was assigned as a
lieutenant in investigations. Shortly after the first claim for
roll call compensation was filed, then-Lieutenant Osterman
attended a mandatory supervisors meeting held by Chief
Sarbarneck. Chief Sarbarneck instructed the supervisors that no
requests for overtime for roll call were to be taken by the
supervisors and that they were to instruct the officers not to
include the roll call as an activity on their daily activity
sheets. Osterman believed this occurred in August 1982. The
officers were so instructed by the supervisors. 
 Chief Osterman testified that from 1983 through 1987 he
prepared the police budgets. Those budgets generally made
"educated guesses" on overtime needs. It was commonplace to
expend moneys as needed, regardless of whether there were funds
in the particular line item.
 Vladomir Ivkovich became chief after this litigation had
been pending for approximately six months. By the time the case
was tried, both the ranking officers and patrol officers had
reached agreements with the village concerning their duty day.
Chief Ivkovich stated that the 1988 agreement provided that the
tour of duty consisted of 8.25 hours, including the roll call. If
a police officer or sergeant worked an extra day, he or she would
be credited with 8.25 hours. If a police officer took off a day,
8.25 hours would be deducted form his or her "time due." The 8.25
hours currently include the roll calls and meal periods.
 Chief Ivkovich testified that at some time either before or
after the 8.25-hour agreements were in effect, he prepared some
budgets for the department. In preparing such budgets, he never
determined how much money would or would not have been needed to
pay for roll call overtime.
 In 1982, certain police officers filed a complaint against
Chief Sarbarneck and the village in state court. The village
filed a verified petition seeking and obtaining removal to the
federal court on the basis that the complaint raised a federal
question. The village then moved to dismiss the complaint for
failure to state a claim. Judge Bernard Decker granted the motion
as to count II with prejudice for want of prosecution and failure
to state a claim upon which relief can be granted. Count I was
dismissed without prejudice because count I was based on state
law. Some months later, counsel filed an identical complaint in
the state court. The complaint was again removed by the village
and assigned to Judge Decker. The village again sought to dismiss
the case and it was again dismissed without prejudice. 
 In 1993, the village moved for summary judgment on the basis
that the prior filing barred the present one. Plaintiffs opposed
the motion and, after a full hearing, the trial court denied the
motion. In 1993, defendant also moved for partial summary
judgment, asserting that a "release" signed by one plaintiff,
Kenneth Osterman, in 1989 precluded that plaintiff from asserting
his claim. Plaintiffs opposed the motion, and after a full
hearing, the trial court denied the motion. 
ANALYSIS
 I
 Defendant initially contends that plaintiffs' brief fails to
comply with Supreme Court Rule 341(f) (134 Ill. 2d R. 341(f)),
which requires an appellee to provide "Points and Authorities" in
the form set forth in Rule 341(e)(1). 134 Ill. 2d R. 341(e)(1). 
Rule 341(e)(1) states that the "Points and Authorities" "shall
consist of the headings of the points and subpoints as in the
Argument, with the citation under each heading of the authorities
relied upon or distinguished, and a reference to the page of the
brief on which each heading and each authority appear." 134 Ill.
2d R. 341(e)(1). 
 Plaintiffs' points and authorities are improper in that they
do not contain any subpoints, as in the argument section, and the
case citations are not listed under each heading, but are listed
in a separate "Table of Authorities." Furthermore, the points
and authorities section contains improper citation of authority. 
Plaintiffs' brief also contains an "Introduction" section before
the statement of facts, which is not required by Rule 341(e) or
(f). Defendant argues that, because of these infractions,
plaintiffs' brief, or at least the "Introduction" section, should
be stricken. However, we believe that plaintiffs' errors are
those of form and not of substance, and we choose to consider the
merits of this case. See Lindahl v. City of Des Plaines, 210
Ill. App. 3d 281, 288, 568 N.E.2d 1306 (1991).
 Defendant contends that the principles of laches bar
plaintiffs from claiming entitlement to overtime compensation for
roll call. Laches is an equitable doctrine that grants or denies
relief based upon the facts of the case. Christ Hospital &
Medical Center v. Human Rights Comm'n, 271 Ill. App. 3d 133, 137,
648 N.E.2d 201 (1995). Laches bars an action where, because of
delay in bringing suit, a party has been misled or prejudiced or
has taken a course of action different from what he otherwise
would have taken. Schons v. Monarch Insurance Co., 214 Ill. App.
3d 601, 609, 574 N.E.2d 3 (1991). A defendant must show
prejudice or hardship rather than mere passage of time and must
demonstrate that the delay induced him to adversely change his
position. Schons, 214 Ill. App. 3d at 609. To that end, it is
essential that the party asserting the defense plead and prove,
not only that a considerable period of time has elapsed and that
prejudice has resulted, but also that the opposing party had
prior knowledge of the facts giving rise to the claim. Patrick
Media Group, Inc. v. City of Chicago, 255 Ill. App. 3d 1, 7, 626
N.E.2d 1066 (1993); Schons, 214 Ill. App. 3d at 609. However,
when a claim or right is not barred by the statute of limitations
period, laches will not apply unless a party's conduct or special
circumstances make it inequitable to grant the requested relief. 
Davis v. Board of Review of the Department of Labor, 132 Ill.
App. 3d 853, 856, 477 N.E.2d 842 (1985); Aiardo v. Village of
Libertyville, 184 Ill. App. 3d 653, 659, 540 N.E.2d 861 (1989). 
 Defendant argues that laches applies because plaintiffs
failed to assert a right by never seeking overtime for roll call. 
Defendant also argues that plaintiffs waited nearly three years
after dismissal of the suit to bring the present action, the
defendant had every reason to believe this issue had been
resolved and had no reason to change its ordinance to indicate
that roll call was a part of the regular duty pay. Defendant
further argues that it was clearly prejudiced by the plaintiffs'
actions because the trial court ordered defendant to pay five
years' worth of overtime for roll call at once. Defendant
asserts that if plaintiffs had made internal claims for
compensation for roll call or had pursued their court claim in a
timely fashion, defendant may have deemed it necessary to amend
its ordinance. 
 Under the circumstances of the instant case, we do not
believe that defendant has met the requirement to assert a
defense of laches. There is no dispute that plaintiffs' claim
was filed within the applicable five-year statute of limitations. 
Also, on this record, we do not believe that plaintiffs' conduct
or special circumstances exist to justify equitable relief to
defendant. The defendant adopted an ordinance allocating funds
for salaries and compensation, including overtime compensation,
but the defendant has refused to pay for all overtime services it
actually received from its police officers. Plaintiffs timely
asserted their right for compensation for roll call duty. 
Furthermore, defendant has made no showing that it actually would
have changed its ordinance to include roll call as a part of the
regular duty day, but merely speculates about the matter. 
Speculation that a party might have proceeded differently is
insufficient to prove harm as a result of an opposing party's
delay. Lippert v. Property Tax Appeal Board, 273 Ill. App. 3d
150, 155, 652 N.E.2d 461 (1995); Van Milligan v. Board of Fire &
Police Commissioners, 158 Ill. 2d 85, 89, 630 N.E.2d 830 (1994).
Accordingly, the trial court correctly ruled that the doctrine of
laches is inapplicable to the instant case.
 Defendant also contends that the plaintiffs waived their
claims for compensation because they failed to follow the proper
procedures for obtaining overtime compensation. However, we note
that there was testimony by Osterman that the officers were
instructed not to submit overtime compensation requests for roll
call and not to record roll call on their daily activity reports.
Thus, it would have been futile for officers to adhere to the
standard operating procedures for obtaining overtime compensation
for roll call. 
 
 II
 Defendant next contends that the plaintiffs were not
entitled to overtime for roll call because there was no prior
appropriation for compensation for roll call. Defendant relies
on section 8-1-7 of the Illinois Municipal Code, which provides:
 "[N]o contract shall be made by the corporate 
 authorities or by any committee or member thereof, and no
 expense shall be incurred by any of the officers or
 departments of any municipality, whether the object of the
 expenditure has been ordered by the corporate authorities or
 not, unless an appropriation has been previously made
 concerning that contract or expense. Any contract made, or
 any expense otherwise incurred, in violation of the
 provisions of this section shall be null and void ***." 65
 ILCS 5/8-1-7 (West 1992).
Plaintiff argues, however, that the defendant was not bound by
the restrictions set forth in section 8-1-7 (65 ILCS 5/8-1-7
(West 1992) because defendant adopted an alternative to an annual
appropriation ordinance as permitted by section 8-2-9.3 of the
Municipal Code. 65 ILCS 5/8-2-9.3 (West 1992). That section
provides that, in lieu of an appropriation ordinance, a village
may pass an annual budget ordinance and may:
 "[D]elegate authority to heads of municipal
 departments, boards, or commissions to delete, add to,
 change or create sub-classes within object classes budgeted
 previously to the department, board, or commission, subject
 to such limitation or *** prior approval by the budget
 officer or executive officer of the municipality ***." 65
 ILCS 5/8-2-9.6 (West 1992).
Plaintiffs argue that, pursuant to section 8-2-9.6 (65 ILCS 5/8-
2-9.6 (West 1992), defendant had the option of transferring money
within a department or from one department or line item to
another and could increase items as it chose, provided it had the
money to pay for such increased costs. Defendant asserts that
the requirement of section 8-1-7 (65 ILCS 5/8-1-7 (West 1992) is
applicable even where a municipality uses a budget ordinance as
an alternative to an annual appropriations ordinance because
transfers between line items or additional appropriations have to
be specifically authorized by the village board and cannot occur
informally to remedy defects or cover unanticipated expenses. 
 Defendant relies on Koudelka v. Village of Woodridge, 91
Ill. App. 3d 884, 413 N.E.2d 1381 (1980). In Koudelka, the
plaintiff had accumulated 1,594 hours of "earned time due," a
purpose not provided for in the village's appropriation
ordinance. However, the village had an unwritten policy
permitting compensatory time off, and, after the plaintiff was
terminated from employment, she sought payment for her
accumulated hours of earned time due. The court held that the
village was not liable for overtime compensation because,
although there was an appropriation for overtime compensation,
there was no appropriation for the type of extraordinary expense,
i.e., earned time due, there claimed by the plaintiff. Koudelka,
91 Ill. App. 3d at 887. 
 However, we believe that Aiardo v. Village of Libertyville
184 Ill. App. 3d 653, 540 N.E.2d 861 (1989), and not Koudelka, is
more instructive. In Aiardo, police officers brought a
declaratory judgement action against the village, police
department and chief of police to determine whether they were
entitled to overtime compensation for roll call. The trial court
found that the village did not have to pay overtime compensation
because no appropriation was made for that purpose. The
appellate court reversed, holding that overtime compensation was
expressly provided for in the village's personnel policy, and
payment of any overtime compensation came out of the general line
item appropriation for salaries and compensation. Therefore,
there was no basis to draw a fine-line distinction between roll
call and other overtime compensation, as urged by the village. 
Aiardo, 184 Ill. App. 3d at 659. 
 In the instant case, ordinance No. 84-43, passed in 1984,
expressly provided for overtime compensation. Apparently, the
defendant paid compensation for overtime from the salary line
item. Unlike Koudelka, as well as the other cases cited by
defendant, compensation for overtime was provided for in the
defendant's annual budget. We do not believe that overtime
compensation for roll call was an "extraordinary expense" as
found in Koudelka. Like the plaintiffs in Aiardo, the plaintiffs
in the instant case are merely seeking compensation for ordinary
overtime services to the village. Assuming that a police officer
has worked in excess of an eight-hour day or a 40-hour week, the
roll call time period will apply towards overtime. We see no
reason to differentiate between overtime due to roll call
attendance and other overtime compensation.
 III
 In their second amended complaint, plaintiffs alleged that
defendant breached an employment contract by not compensating the
police officers for overtime work in excess of the 40-hour work
week. Defendant contends, however, that there was no contract
between the police officers and the village during the relevant
time period because salary ordinances are not contracts. 
Plaintiffs argue that the salary ordinances are contracts implied
in law that establish the rights of the officers to wages. 
 The essence of a cause of action for contract implied in
law, or a quasi-contract, is the defendant's failure to make
equitable payment for a benefit that it voluntarily accepted from
the plaintiff. Woodfield Lanes, Inc. v. Village of Schaumburg,
168 Ill. App. 3d 763, 766, 523 N.E.2d 36 (1988). Contracts
implied in law, notwithstanding the parties' intentions, result
from a duty imposed by law and are contracts merely in the sense
that they are created and governed by principles of equity.
Zadrozny v. City Colleges, 220 Ill. App. 3d 290, 295, 581 N.E.2d
44 (1991). In order to recover on an implied contract, the facts
and circumstances must show that, at the time the services were
rendered, one party expected to receive payment and the other
party intended to make payment. Zadrozny, 220 Ill. App. 3d at
296. 
 Defendant argues that a contract did not exist because there
was not a "meeting of the minds" between the parties. Defendant
asserts that none of the plaintiffs ever sought overtime
compensation for attending roll call until 1982 and there were no
acts on the part of the defendant that would have led the
plaintiffs to believe that defendant considered roll call extra
time worked. However, the ordinance expressly states that
plaintiffs were to receive overtime compensation for any time
worked over 40 hours. Because defendants had a duty to enforce
the ordinance, plaintiffs could expect to be paid for time spent
during roll call. In our view, defendant's acceptance of the
benefit of plaintiffs' attending roll call, and defendant's
failure to meet its duty to compensate plaintiffs for roll call,
constituted unjust enrichment. See Woodfield Lanes, Inc., 168
Ill. App. 3d at 768. 
 IV
 Defendant next contends that meal time was not work time,
and, therefore, even counting roll call, plaintiffs did not work
in excess of eight hours. Defendant relies on federal cases to
support its argument. Federal courts have decided this issue
based on the Federal Labor Standards Act (FLSA). 29 U.S.C.  201
et seq. (1994). Specifically, the courts have relied on section
785.19 of the Code of Federal Regulations (29 C.F.R. 785.19
(1996)), which states that a meal period is noncompensable if the
employee is completely relieved from duty for the purposes of
eating regular meals. The court in Armitage v. City of Emporia,
982 F.2d 430 (10th Cir. 1992), stated that the correct standard
for determining compensability of a meal period was whether the
officer is primarily engaged in work-related duties during meal
periods. Armitage, 982 F.2d at 432.
 Although defendant does not contend that the FLSA and its
regulations are applicable to the instant case, defendant does
argue that the plaintiffs' mealtime was primarily for the
officers' benefit and not the village's. Defendant relies on a
memo from Chief Sarbarneck from Watch Commander Hansen Perkins
regarding taking away Cannella's lunch period and breaks because
Cannella was late for duty. Defendant argues that this memo is
compelling evidence that the meal period was personal time and
could therefore be used to make up time that plaintiffs should
have been working. Defendant also argues that meal time was
personal time because officers were rarely recalled to duty from
mealtime, and if an officer was called away from his or her meal
period, the officer could receive additional time to finish. 
 However, we do not believe that these instances negate the
fact that meal time is, and always has been, included in the
ordinance as part of the "eight hour" shift. Under the
defendant's interpretation, if roll call is included in the work
day and the lunch break is intended to be uncompensated personal
time, plaintiffs' actual work time would be 7 hours, which would
contradict the ordinance's definition of a work day and work
week. We do not believe that the ordinance expresses this
interpretation, and we do not believe that the village trustees
intended the ordinance to be interpreted in that manner. 
Accordingly, we conclude that the officers' 30-minute meal period
was included as part of the plaintiffs' eight-hour work day. See
Aiardo, 184 Ill. App. 3d at 657.
 V
 Defendants next contend that the trial court erred by not
granting summary judgment against plaintiff Osterman because
Osterman released the village from any and all claims arising
from his employment with the village. Summary judgment is
properly granted when the pleadings, depositions, and affidavits
show that no genuine issue of material fact exists and the moving
party is entitled to judgment as a matter of law. Miller v.
Danville Elks Lodge 332, 211 Ill. App. 3d 145, 151, 569 N.E.2d
1160 (1991). On review, this court reviews the granting of
summary judgment de novo--that is, this court must determine if
the trial court correctly decided that no genuine issues of
material fact were present. Makowski v. City of Naperville, 249
Ill. App. 3d 110, 115, 617 N.E.2d 1251 (1993).
 A release is a contract, whereby one party abandons a claim
to another against whom the claim exists, and its interpretation
is governed by the principles that govern contract law cases. 
Aqua-Aerobic Systems, Inc. v. Ravitts, 166 Ill. App. 3d 168, 171,
520 N.E.2d 67 (1988). Defendant argues that on August 29, 1989, 
Kenneth Osterman executed a "Release of All Claims" that, for the
sum of $13,500, released the Village of Bridgeview "from any and
all actions, claims and demands of whatsoever kind or nature." 
The release further stated:
 "I further declare that I fully understand that this
 settlement releases any and all claims against the Village
 of Bridgeview arising from my employment with the Village of
 Bridgeview, which employment has terminated with my receipt
 of a pension from the Village Police Pension Fund." 
When this release was executed, Kenneth Osterman was a named
plaintiff in the instant action. Therefore, defendant argues
that Osterman is not entitled to any compensation in this case. 
We disagree. The original release was for a personal injury. A
release is not valid for a subsequent separate and distinct,
injury. See O'Keefe v. Greenwald, 214 Ill. App. 3d 926, 935, 574
N.E.2d 136 (1991). Clearly, this cause of action for
compensation for roll call duty is separate and distinct from the
release for the personal injury claim. Furthermore, defendant
has failed to include in the record a transcript of the hearing
on the issue of the release. The burden rests on the appellant to
provide a sufficient record to support the claim of error, and,
in the absence of such a record, the reviewing court will presume
that the trial court's order was in conformity with established
legal principles and had a sufficient factual basis. Foutch v.
O'Bryant, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984); In re
Marriage of Martins, 269 Ill. App. 3d 380, 387, 645 N.E.2d 567
(1995).
 VI
 Lastly, defendant contends that the trial court erred by not
granting summary judgment against Richard Cannella, George
Fischer, William D. Goodman, Russell C. Harvey, Joseph M.
Holwell, Walter J. Klimek, John Pentz, Anthony Oleynichak,
Richard Ryan, Thomas Sparrow, and William Stanton because those
plaintiffs refiled their claim on more than one occasion in
violation of section 13-217 of the Code of Civil Procedure. 735
ILCS 5/13-217 (West 1992). Section 13-217 provides:
 "Reversal or dismissal. In the actions specified in
 Article XIII of this Act or any other act or contract where
 the time for commencing an action is limited, if judgment is
 entered for the plaintiff but reversed on appeal, or if
 there is a verdict in favor of the plaintiff and, upon a
 motion in arrest of judgment, the judgment is entered
 against the plaintiff, or the action is voluntarily 
dismissed by the plaintiff, or the action is dismissed for 
want of prosecution, or the action is dismissed by a United
 States District Court for lack of jurisdiction, or the 
 action is dismissed by a United States District Court for
 improper venue, then, whether or not the time limitation for
 bringing such action expires during the pendency of such
 action, the plaintiff, his or her heirs, executors or
 administrators may commence a new action within one year or
 within the remaining period of limitation, whichever is
 greater, after such judgment is reversed or entered against
 the plaintiff, or after the action is voluntarily dismissed
 by the plaintiff, or the action is dismissed for want of
 prosecution, or the action is dismissed by a United States
 District Court for *** improper venue." (Emphasis added.)
 735 ILCS 5/13-217 (West 1994).
Our supreme court has interpreted section 13-217 as permitting
"one, and only one, refiling of a claim even if the statute of
limitations has not expired." Flesner v. Youngs Development Co.,
145 Ill. 2d 252, 254, 582 N.E.2d 720 (1991). 
 In the instant case, in 1982, plaintiffs filed a two-count
complaint in the circuit court of Cook County. Count I of the
complaint sought money damages for overtime compensation for
attendance at roll call. Count II of that complaint claimed that
defendants were acting under color of law in violation of the
plaintiffs' fifth and fourteenth amendment constitutional rights. 
U.S. Const., amends. V, XIV. Defendant filed a verified petition
with the United States District Court seeking removal to the
federal court. After removal, defendant filed a motion to
dismiss the complaint for failure to state a claim on which
relief could be granted, pursuant to Rule 12 of the Federal Rules
of Civil Procedure. Fed. R. Civ. P. 12. The court granted that
motion to dismiss count I of the complaint without prejudice. In
1983, plaintiffs refiled the identical complaint in state court
in 1983. The defendant again removed the case, filing verified
petitions asserting that the federal court had jurisdiction. The
court dismissed count II, without prejudice, for failure to state
a claim upon which relief can be granted, and the court stated
that "the plaintiffs are free to refile in any court having
jurisdiction of the parties and subject matter in controversy."
 Defendant argues that the instant action constituted a
second filing after plaintiffs' complaint was dismissed for lack
of federal jurisdiction. Therefore, defendant contends that,
pursuant to section 13-217, plaintiffs were statutorily barred
from filing the 1986 complaint. Defendant relies on Flesner v.
Youngs Development Co., 145 Ill. 2d 252, 582 N.E.2d 720 (1991). 
In Flesner, the plaintiffs filed a complaint in federal court. 
This complaint was dismissed for lack of jurisdiction. 
Plaintiffs filed a second complaint in the circuit court, and
this complaint was voluntarily dismissed. Plaintiffs filed a
third complaint, and the trial court granted defendants' motion
to dismiss the complaint. The court allowed plaintiffs' motion
to set aside the order of dismissal and to reinstate the
complaint. The appellate court affirmed. The supreme court
reversed and dismissed plaintiffs' complaint, holding the
plaintiffs had used up their one chance to refile their claim. 
Flesner, 145 Ill. 2d at 254.
 Defendant also relies on Koffski v. Village of North
Barrington, 241 Ill. App. 3d 479, 609 N.E.2d 364 (1993). In
Koffski, plaintiffs filed a complaint in circuit court seeking
damages related to a personal injury. Approximately one year
later, plaintiffs voluntarily dismissed their state court action
against all defendants. Following the dismissal, plaintiffs filed
a complaint in federal court, which the court dismissed for lack
of subject-matter jurisdiction based upon an absence of diversity
of citizenship. Four months later, plaintiffs filed a second
complaint in the district court against the same defendants on
the same cause of action. Prior to the district court's ruling
on defendants' motion to dismiss the second complaint, plaintiffs
filed a section 2-1401 motion (735 ILCS 5/2-1401 (West 1992)) in
the circuit court to vacate the circuit court's order granting
plaintiffs' motion for voluntary dismissal. The defendants moved
to dismiss plaintiffs' motion to vacate, which the court granted. 
The appellate court affirmed, holding that the plaintiffs were
not entitled to relief from the order granting voluntary
dismissal, where they refiled the same cause of action against
the same defendants in federal court which was subsequently
dismissed for lack of subject matter jurisdiction. Koffski, 241
Ill. App. 3d at 481.
 We note that defendant has failed to provide a complete
record on appeal regarding the claim that plaintiffs' complaint
is barred by section 13-217. As we stated earlier, it is the
appellant's burden to provide a sufficient record on appeal and,
in the absence of such a record, the reviewing court will presume
that the trial court's order was in conformity with established
legal principles and had a sufficient factual basis. Foutch, 99
Ill. 2d at 391-92. Therefore, we deem this argument to be
waived on appeal. However, assuming arguendo that this issue was
not waived, defendant's claim is not well founded. We believe
the above cases are inapposite to the case sub judice. First, we
disagree with defendant that plaintiffs' cause of action was
dismissed by the federal court for lack of jurisdiction. 
Furthermore, defendant, on its own motion, transferred the case
to federal court, which, under section 1441 of the United States
Code, required defendant to plead that the federal court had
jurisdiction of the claim. 28 U.S.C. 1441 (1994). Section
1441, which governs removal of actions, provides in pertinent
part:
 "(a) Except as otherwise expressly provided by Act of
 Congress, any civil action brought in a State court of
 which the district courts of the United States have original
 jurisdiction, may be removed by the defendant or the
 defendants, to the district court of the United States for
 the district and division embracing the place where such
 action is pending. ***
 (b) Any civil action of which the district courts have
 original jurisdiction founded on a claim or right arising 
 under the Constitution, treaties, or laws of the United 
 States shall be removable without regard to the citizenship
 or residence of the parties. Any other such action shall be
 removable only if none of the parties in interest properly
 joined and served as defendants is a citizen of the State in
 which the action is brought." (Emphasis added.) 28 U.S.C.
 1441(a),(b)(1994). 
 The congressionally mandated procedures for removal are set
out in 28 U.S.C. 1446(a) and require:
 "(a) [d]efendant or defendants desiring to remove any civil
 action *** shall file in the district court of the United
 States for the district and division within which such
 action is pending a notice of removal signed pursuant to
 Rule 11 of the Federal Rules of Civil Procedure and 
 containing a short and plain statement of the grounds for
 removal ***." 28 U.S.C. 1446(a)(1994).
Thus, defendant's argument that the trial court dismissed the
case for lack of jurisdiction is inconsistent with defendant's
conduct of transferring the case to federal court based on
federal jurisdiction.
 For the foregoing reasons, the judgment of the circuit court
of Cook County is affirmed.
 Affirmed.