RICHARD CANNELLA *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF BRIDGEVIEW, Defendant-Appellant.

First District (5th Division) No. 1—95—0544

Opinion filed November 8, 1996.

1066

Sharon L. Eiseman and Mark A. Balkin, both of Ancel, Glink, Diamond, Cope & Brush, P.C., of Chicago, for appellant.

Perry M. Berke, of Baskin, Server, Berke, Weinstein & Spiro, and Susan P. Malone, both of Chicago, for appellees.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs, former and present police officers of the Village of Bridgeview (defendant), filed a two-count complaint against defendant seeking declaratory relief and damages related to a claim for 15 minutes of overtime compensation for attendance at daily roll call. Count I of the second amended complaint sought damages for officers who were employed by the village at the time of its filing. Count II sought damages for former police officers. On July 30, 1993, the trial court entered a judgment order finding defendant liable to the plaintiffs for overtime compensation for their attendance at patrol division roll call. Defendant appeals, contending that: (1) the doctrine of *laches* and waiver preclude plaintiffs from claiming entitlement to overtime compensation for roll call; (2) there was no prior appropriation of monies to pay overtime for roll call; (3) there was no contract between the police officers and the village during the relevant time period; (4) plaintiffs did not work in excess of eight hours because mealtime was not included as work time; (5) the trial court erred by not granting summary judgment against Kenneth Osterman because Osterman released the village from any and all claims arising from his employment; and (6) the court erred by not granting summary judgment against plaintiffs because plaintiffs refiled their claim on more than one occasion, in violation of section 13—217 of the Illinois Code of Civil Procedure. 735 ILCS 5/13—217 (West 1992).

BACKGROUND

In 1971, police department general order 71—10, entitled "Reporting Time for All Roll Calls," was implemented and stated:

"1. All members of this command shall report for duty 15 minutes prior to starting time. Example: 1st Watch shall report at 23.45 hours, 2nd Watch shall report at 15.45 hours and 3rd Watch shall report at 07.45 hours. All Watch Commanders shall conduct a 15-minute roll call and all personnel report to 'his or her' assignments on the hour.

2. Watch commanders shall set an example by reporting at the prescribed time."

In 1974, the Village of Bridgeview passed an ordinance that included a provision that police officer employees of the village would be entitled to overtime pay for hours worked beyond the eight-hour day. The ordinance further provided that such work must be approved by the department head. In September 1975, the ordinance was amended to provide:

> "Any duties required by the head of any department or any member of that department to be performed in off-duty periods shall be classified as overtime work and shall be compensated for in the manner above prescribed."

Stanley Sarbarneck was chief of police for Bridgeview from 1971 until 1983. At that time, most of the police officer employees were "part time" employees. Chief Sarbarneck testified that the officers were required to be present for roll call. Roll call was used for training, reports, duty assignments, and bulletins as to things to watch during the tour of duty.

After the roll call was completed, the tour of duty of the officers consisted of eight hours. There were no written directives authorizing compensation or time off for missed or interrupted meal periods. Officer Kenneth Osterman testified that meal periods were interrupted more frequently than not. He was never informed of the existence of any procedure for obtaining compensation or additional time because of a missed or interrupted meal period.

Chief Sarbarneck testified he participated in the preparation of the police department budgets during his tenure. Each year the budgets included money for payment of overtime. There were no separate line items for overtime. Sarbarneck could not recall the numbers that were in the budgets, stating he would only be "guessing or lying" if he were to state what those numbers might have been.

Plaintiffs were hired at varying dates from 1965 to 1982. In October 1983, after the retirement of Chief Sarbarneck, Kenneth Osterman became the chief of police for Bridgeview, a position he held until January 1987. Prior to that time, he was assigned as a lieutenant in investigations. Shortly after the first claim for roll call compensation was filed, then-Lieutenant Osterman attended a mandatory supervisors meeting held by Chief Sarbarneck. Chief Sarbarneck instructed the supervisors that no requests for overtime for roll call were to be taken by the supervisors and that they were to instruct the officers not to include the roll call as an activity on their daily activity sheets. Osterman believed this occurred in August 1982. The officers were so instructed by the supervisors.

Chief Osterman testified that from 1983 through 1987 he pre-

pared the police budgets. Those budgets generally made "educated guesses" on overtime needs. It was commonplace to expend moneys as needed, regardless of whether there were funds in the particular line item.

Vladomir Ivkovich became chief after this litigation had been pending for approximately six months. By the time the case was tried, both the ranking officers and patrol officers had reached agreements with the village concerning their duty day. Chief Ivkovich stated that the 1988 agreement provided that the tour of duty consisted of 8.25 hours, including the roll call. If a police officer or sergeant worked an extra day, he or she would be credited with 8.25 hours. If a police officer took off a day, 8.25 hours would be deducted from his or her "time due." The 8.25 hours currently include the roll calls and meal periods.

Chief Ivkovich testified that at some time either before or after the 8.25-hour agreements were in effect, he prepared some budgets for the department. In preparing such budgets, he never determined how much money would or would not have been needed to pay for roll call overtime.

In 1982, certain police officers filed a complaint against Chief Sarbarneck and the village in state court. The village filed a verified petition seeking and obtaining removal to the federal court on the basis that the complaint raised a federal question. The village then moved to dismiss the complaint for failure to state a claim. Judge Bernard Decker granted the motion as to count II with prejudice for want of prosecution and failure to state a claim upon which relief can be granted. Count I was dismissed without prejudice because count I was based on state law. Some months later, counsel filed an identical complaint in the state court. The complaint was again removed by the village and assigned to Judge Decker. The village again sought to dismiss the case and it was again dismissed without prejudice.

In 1993, the village moved for summary judgment on the basis that the prior filing barred the present one. Plaintiffs opposed the motion and, after a full hearing, the trial court denied the motion. In 1993, defendant also moved for partial summary judgment, asserting that a "release" signed by one plaintiff, Kenneth Osterman, in 1989 precluded that plaintiff from asserting his claim. Plaintiffs opposed the motion, and after a full hearing, the trial court denied the motion.

## ANALYSIS

### I

■ Defendant initially contends that plaintiffs' brief fails to

comply with Supreme Court Rule 341(f) (134 Ill. 2d R. 341(f)), which requires an appellee to provide "Points and Authorities" in the form set forth in Rule 341(e)(1). 134 Ill. 2d R. 341(e)(1). Rule 341(e)(1) states that the "Points and Authorities" "shall consist of the headings of the points and subpoints as in the Argument, with the citation under each heading of the authorities relied upon or distinguished, and a reference to the page of the brief on which each heading and each authority appear." 134 Ill. 2d R. 341(e)(1).

Plaintiffs' points and authorities are improper in that they do not contain any subpoints, as in the argument section, and the case citations are not listed under each heading, but are listed in a separate "Table of Authorities." Furthermore, the points and authorities section contains improper citation of authority. Plaintiffs' brief also contains an "Introduction" section before the statement of facts, which is not required by Rule 341(e) or (f). Defendant argues that, because of these infractions, plaintiffs' brief, or at least the "Introduction" section, should be stricken. However, we believe that plaintiffs' errors are those of form and not of substance, and we choose to consider the merits of this case. See *Lindahl v. City of Des Plaines*, 210 Ill. App. 3d 281, 288, 568 N.E.2d 1306 (1991).

■ Defendant contends that the principles of *laches* bar plaintiffs from claiming entitlement to overtime compensation for roll call. *Laches* is an equitable doctrine that grants or denies relief based upon the facts of the case. *Christ Hospital & Medical Center v. Human Rights Comm'n*, 271 Ill. App. 3d 133, 137, 648 N.E.2d 201 (1995). *Laches* bars an action where, because of delay in bringing suit, a party has been misled or prejudiced or has taken a course of action different from what he otherwise would have taken. *Schons v. Monarch Insurance Co.*, 214 Ill. App. 3d 601, 609, 574 N.E.2d 3 (1991). A defendant must show prejudice or hardship rather than mere passage of time and must demonstrate that the delay induced him to adversely change his position. *Schons*, 214 Ill. App. 3d at 609. To that end, it is essential that the party asserting the defense plead and prove, not only that a considerable period of time has elapsed and that prejudice has resulted, but also that the opposing party had prior knowledge of the facts giving rise to the claim. *Patrick Media Group, Inc. v. City of Chicago*, 255 Ill. App. 3d 1, 7, 626 N.E.2d 1066 (1993); *Schons*, 214 Ill. App. 3d at 609. However, when a claim or right is not barred by the statute of limitations period, *laches* will not apply unless a party's conduct or special circumstances make it inequitable to grant the requested relief. *Davis v. Board of Review of the Department of Labor*, 132 Ill. App. 3d 853, 856, 477 N.E.2d 842 (1985); *Aiardo v. Village of Libertyville*, 184 Ill. App. 3d 653, 659, 540 N.E.2d 861 (1989).

Defendant argues that *laches* applies because plaintiffs failed to assert a right by never seeking overtime for roll call. Defendant also argues that plaintiffs waited nearly three years after dismissal of the suit to bring the present action, the defendant had every reason to believe this issue had been resolved and had no reason to change its ordinance to indicate that roll call was a part of the regular duty pay. Defendant further argues that it was clearly prejudiced by the plaintiffs' actions because the trial court ordered defendant to pay five years' worth of overtime for roll call at once. Defendant asserts that if plaintiffs had made internal claims for compensation for roll call or had pursued their court claim in a timely fashion, defendant may have deemed it necessary to amend its ordinance.

■ Under the circumstances of the instant case, we do not believe that defendant has met the requirement to assert a defense of *laches*. There is no dispute that plaintiffs' claim was filed within the applicable five-year statute of limitations. Also, on this record, we do not believe that plaintiffs' conduct or special circumstances exist to justify equitable relief to defendant. The defendant adopted an ordinance allocating funds for salaries and compensation, including overtime compensation, but the defendant has refused to pay for all overtime services it actually received from its police officers. Plaintiffs timely asserted their right for compensation for roll call duty. Furthermore, defendant has made no showing that it actually would have changed its ordinance to include roll call as a part of the regular duty day, but merely speculates about the matter. Speculation that a party might have proceeded differently is insufficient to prove harm as a result of an opposing party's delay. *Lippert v. Property Tax Appeal Board*, 273 Ill. App. 3d 150, 155, 652 N.E.2d 461 (1995); *Van Milligan v. Board of Fire & Police Commissioners*, 158 Ill. 2d 85, 89, 630 N.E.2d 830 (1994). Accordingly, the trial court correctly ruled that the doctrine of *laches* is inapplicable to the instant case.

■ Defendant also contends that the plaintiffs waived their claims for compensation because they failed to follow the proper procedures for obtaining overtime compensation. However, we note that there was testimony by Osterman that the officers were instructed not to submit overtime compensation requests for roll call and not to record roll call on their daily activity reports. Thus, it would have been futile for officers to adhere to the standard operating procedures for obtaining overtime compensation for roll call.

## II

■ Defendant next contends that the plaintiffs were not entitled to overtime for roll call because there was no prior appropriation for

compensation for roll call. Defendant relies on section 8—1—7 of the Illinois Municipal Code, which provides:

"[N]o contract shall be made by the corporate authorities or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void ***." 65 ILCS 5/8—1—7 (West 1992).

Plaintiff argues, however, that the defendant was not bound by the restrictions set forth in section 8—1—7 (65 ILCS 5/8—1—7 (West 1992)) because defendant adopted an alternative to an annual appropriation ordinance as permitted by section 8—2—9.3 of the Municipal Code. 65 ILCS 5/8—2—9.3 (West 1992). That section provides that, in lieu of an appropriation ordinance, a village may pass an annual budget ordinance and may:

"[D]elegate authority to heads of municipal departments, boards, or commissions to delete, add to, change or create sub-classes within object classes budgeted previously to the department, board, or commission, subject to such limitation or *** prior approval by the budget officer or executive officer of the municipality ***." 65 ILCS 5/8—2—9.6 (West 1992).

Plaintiffs argue that, pursuant to section 8—2—9.6 (65 ILCS 5/8—2—9.6 (West 1992)), defendant had the option of transferring money within a department or from one department or line item to another and could increase items as it chose, provided it had the money to pay for such increased costs. Defendant asserts that the requirement of section 8—1—7 (65 ILCS 5/8—1—7 (West 1992)) is applicable even where a municipality uses a budget ordinance as an alternative to an annual appropriations ordinance because transfers between line items or additional appropriations have to be specifically authorized by the village board and cannot occur informally to remedy defects or cover unanticipated expenses.

Defendant relies on *Koudelka v. Village of Woodridge*, 91 Ill. App. 3d 884, 413 N.E.2d 1381 (1980). In *Koudelka*, the plaintiff had accumulated 1,594 hours of "earned time due," a purpose not provided for in the village's appropriation ordinance. However, the village had an unwritten policy permitting compensatory time off, and, after the plaintiff was terminated from employment, she sought payment for her accumulated hours of earned time due. The court held that the village was not liable for overtime compensation because, although there was an appropriation for overtime compensa-

tion, there was no appropriation for the type of extraordinary expense, *i.e.*, earned time due, there claimed by the plaintiff. *Koudelka*, 91 Ill. App. 3d at 887.

However, we believe that *Aiardo v. Village of Libertyville*, 184 Ill. App. 3d 653, 540 N.E.2d 861 (1989), and not *Koudelka*, is more instructive. In *Aiardo*, police officers brought a declaratory judgment action against the village, police department and chief of police to determine whether they were entitled to overtime compensation for roll call. The trial court found that the village did not have to pay overtime compensation because no appropriation was made for that purpose. The appellate court reversed, holding that overtime compensation was expressly provided for in the village's personnel policy, and payment of any overtime compensation came out of the general line item appropriation for salaries and compensation. Therefore, there was no basis to draw a fine-line distinction between roll call and other overtime compensation, as urged by the village. *Aiardo*, 184 Ill. App. 3d at 659.

■ In the instant case, ordinance No. 84—43, passed in 1984, expressly provided for overtime compensation. Apparently, the defendant paid compensation for overtime from the salary line item. Unlike *Koudelka*, as well as the other cases cited by defendant, compensation for overtime was provided for in the defendant's annual budget. We do not believe that overtime compensation for roll call was an "extraordinary expense" as found in *Koudelka*. Like the plaintiffs in *Aiardo*, the plaintiffs in the instant case are merely seeking compensation for ordinary overtime services to the village. Assuming that a police officer has worked in excess of an eight-hour day or a 40-hour week, the roll call time period will apply towards overtime. We see no reason to differentiate between overtime due to roll call attendance and other overtime compensation.

### III

In their second amended complaint, plaintiffs alleged that defendant breached an employment contract by not compensating the police officers for overtime work in excess of the 40-hour work week. Defendant contends, however, that there was no contract between the police officers and the village during the relevant time period because salary ordinances are not contracts. Plaintiffs argue that the salary ordinances are contracts implied in law that establish the rights of the officers to wages.

■ The essence of a cause of action for contract implied in law, or a quasi-contract, is the defendant's failure to make equitable payment for a benefit that it voluntarily accepted from the plaintiff.

*Woodfield Lanes, Inc. v. Village of Schaumburg*, 168 Ill. App. 3d 763, 766, 523 N.E.2d 36 (1988). Contracts implied in law, notwithstanding the parties' intentions, result from a duty imposed by law and are contracts merely in the sense that they are created and governed by principles of equity. *Zadrozny v. City Colleges*, 220 Ill. App. 3d 290, 295, 581 N.E.2d 44 (1991). In order to recover on an implied contract, the facts and circumstances must show that, at the time the services were rendered, one party expected to receive payment and the other party intended to make payment. *Zadrozny*, 220 Ill. App. 3d at 296.

■ Defendant argues that a contract did not exist because there was not a "meeting of the minds" between the parties. Defendant asserts that none of the plaintiffs ever sought overtime compensation for attending roll call until 1982 and there were no acts on the part of the defendant that would have led the plaintiffs to believe that defendant considered roll call extra time worked. However, the ordinance expressly states that plaintiffs were to receive overtime compensation for any time worked over 40 hours. Because defendants had a duty to enforce the ordinance, plaintiffs could expect to be paid for time spent during roll call. In our view, defendant's acceptance of the benefit of plaintiffs' attending roll call, and defendant's failure to meet its duty to compensate plaintiffs for roll call, constituted unjust enrichment. See *Woodfield Lanes, Inc.*, 168 Ill. App. 3d at 768.

## IV

■ Defendant next contends that mealtime was not work time, and, therefore, even counting roll call, plaintiffs did not work in excess of eight hours. Defendant relies on federal cases to support its argument. Federal courts have decided this issue based on the Federal Labor Standards Act (FLSA). 29 U.S.C. § 201 *et seq.* (1994). Specifically, the courts have relied on section 785.19 of the Code of Federal Regulations (29 C.F.R. § 785.19 (1996)), which states that a meal period is noncompensable if the employee is completely relieved from duty for the purposes of eating regular meals. The court in *Armitage v. City of Emporia*, 982 F.2d 430 (10th Cir. 1992), stated that the correct standard for determining compensability of a meal period is whether the officer is primarily engaged in work-related duties during meal periods. *Armitage*, 982 F.2d at 432.

Although defendant does not contend that the FLSA and its regulations are applicable to the instant case, defendant does argue that the plaintiffs' mealtime was primarily for the officers' benefit and not the village's. Defendant relies on a memo from Chief Sarbarneck from Watch Commander Hansen Perkins regarding taking away Cannella's lunch period and breaks because Cannella was late for

duty. Defendant argues that this memo is compelling evidence that the meal period was personal time and could therefore be used to make up time that plaintiffs should have been working. Defendant also argues that mealtime was personal time because officers were rarely recalled to duty from mealtime, and if an officer was called away from his or her meal period, the officer could receive additional time to finish.

However, we do not believe that these instances negate the fact that mealtime is, and always has been, included in the ordinance as part of the "eight hour" shift. Under the defendant's interpretation, if roll call is included in the work day and the lunch break is intended to be uncompensated personal time, plaintiffs' actual work time would be $7^3/_4$ hours, which would contradict the ordinance's definition of a work day and work week. We do not believe that the ordinance expresses this interpretation, and we do not believe that the village trustees intended the ordinance to be interpreted in that manner. Accordingly, we conclude that the officers' 30-minute meal period was included as part of the plaintiffs' eight-hour work day. See *Aiardo*, 184 Ill. App. 3d at 657.

## V

Defendants next contend that the trial court erred by not granting summary judgment against plaintiff Osterman because Osterman released the village from any and all claims arising from his employment with the village. Summary judgment is properly granted when the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Miller v. Danville Elks Lodge 332*, 211 Ill. App. 3d 145, 151, 569 N.E.2d 1160 (1991). On review, this court reviews the granting of summary judgment *de novo*—that is, this court must determine if the trial court correctly decided that no genuine issues of material fact were present. *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115, 617 N.E.2d 1251 (1993).

A release is a contract, whereby one party abandons a claim to another against whom the claim exists, and its interpretation is governed by the principles that govern contract law cases. *Aqua-Aerobic Systems, Inc. v. Ravitts*, 166 Ill. App. 3d 168, 171, 520 N.E.2d 67 (1988). Defendant argues that on August 29, 1989, Kenneth Osterman executed a "Release of All Claims" that, for the sum of $13,500, released the Village of Bridgeview "from any and all actions, claims and demands of whatsoever kind or nature." The release further stated:

"I further declare that I fully understand that this settlement

releases any and all claims against the Village of Bridgeview arising from my employment with the Village of Bridgeview, which employment has terminated with my receipt of a pension from the Village Police Pension Fund."

When this release was executed, Kenneth Osterman was a named plaintiff in the instant action. Therefore, defendant argues that Osterman is not entitled to any compensation in this case. We disagree. The original release was for a personal injury. A release is not valid for a subsequent separate and distinct injury. See *O'Keefe v. Greenwald*, 214 Ill. App. 3d 926, 935, 574 N.E.2d 136 (1991). Clearly, this cause of action for compensation for roll call duty is separate and distinct from the release for the personal injury claim. Furthermore, defendant has failed to include in the record a transcript of the hearing on the issue of the release. The burden rests on the appellant to provide a sufficient record to support the claim of error, and, in the absence of such a record, the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984); *In re Marriage of Martins*, 269 Ill. App. 3d 380, 387, 645 N.E.2d 567 (1995).

## VI

 Lastly, defendant contends that the trial court erred by not granting summary judgment against Richard Cannella, George Fischer, William D. Goodman, Russell C. Harvey, Joseph M. Holwell, Walter J. Klimek, John Pentz, Anthony Oleynichak, Richard Ryan, Thomas Sparrow, and William Stanton because those plaintiffs refiled their claim on more than one occasion in violation of section 13—217 of the Code of Civil Procedure. 735 ILCS 5/13—217 (West 1992). Section 13—217 provides:

"Reversal or dismissal. In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if judgment is entered for the plaintiff but reversed on appeal, or if there is a verdict in favor of the plaintiff and, upon a motion in arrest of judgment, the judgment is entered against the plaintiff, or the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, *or the action is dismissed by a United States District Court for lack of jurisdiction*, or the action is dismissed by a United States District Court for improper venue, then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after such

judgment is reversed or entered against the plaintiff, or after the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for *** improper venue." (Emphasis added.) 735 ILCS 5/13—217 (West 1994).

Our supreme court has interpreted section 13—217 as permitting "one, and only one, refiling of a claim even if the statute of limitations has not expired." *Flesner v. Youngs Development Co.*, 145 Ill. 2d 252, 254, 582 N.E.2d 720 (1991).

In the instant case, in 1982, plaintiffs filed a two-count complaint in the circuit court of Cook County. Count I of the complaint sought money damages for overtime compensation for attendance at roll call. Count II of that complaint claimed that defendants were acting under color of law in violation of the plaintiffs' fifth and fourteenth amendment constitutional rights. U.S. Const., amends. V, XIV. Defendant filed a verified petition with the United States District Court seeking removal to the federal court. After removal, defendant filed a motion to dismiss the complaint for failure to state a claim on which relief could be granted, pursuant to Rule 12 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12. The court granted that motion to dismiss count I of the complaint without prejudice. In 1983, plaintiffs refiled the identical complaint in state court in 1983. The defendant again removed the case, filing verified petitions asserting that the federal court had jurisdiction. The court dismissed count II, without prejudice, for failure to state a claim upon which relief can be granted, and the court stated that "the plaintiffs are free to refile in any court having jurisdiction of the parties and subject matter in controversy."

Defendant argues that the instant action constituted a second filing after plaintiffs' complaint was dismissed for lack of federal jurisdiction. Therefore, defendant contends that, pursuant to section 13—217, plaintiffs were statutorily barred from filing the 1986 complaint. Defendant relies on *Flesner v. Youngs Development Co.*, 145 Ill. 2d 252, 582 N.E.2d 720 (1991). In *Flesner*, the plaintiffs filed a complaint in federal court. This complaint was dismissed for lack of jurisdiction. Plaintiffs filed a second complaint in the circuit court, and this complaint was voluntarily dismissed. Plaintiffs filed a third complaint, and the trial court granted defendants' motion to dismiss the complaint. The court allowed plaintiffs' motion to set aside the order of dismissal and to reinstate the complaint. The appellate court affirmed. The supreme court reversed and dismissed plaintiffs' complaint, holding the plaintiffs had used up their one chance to refile their claim. *Flesner*, 145 Ill. 2d at 254.

Defendant also relies on *Koffski v. Village of North Barrington,* 241 Ill. App. 3d 479, 609 N.E.2d 364 (1993). In *Koffski,* plaintiffs filed a complaint in circuit court seeking damages related to a personal injury. Approximately one year later, plaintiffs voluntarily dismissed their state court action against all defendants. Following the dismissal, plaintiffs filed a complaint in federal court, which the court dismissed for lack of subject-matter jurisdiction based upon an absence of diversity of citizenship. Four months later, plaintiffs filed a second complaint in the district court against the same defendants on the same cause of action. Prior to the district court's ruling on defendants' motion to dismiss the second complaint, plaintiffs filed a section 2—1401 motion (735 ILCS 5/2—1401 (West 1992)) in the circuit court to vacate the circuit court's order granting plaintiffs' motion for voluntary dismissal. The defendants moved to dismiss plaintiffs' motion to vacate, which the court granted. The appellate court affirmed, holding that the plaintiffs were not entitled to relief from the order granting voluntary dismissal, where they refiled the same cause of action against the same defendants in federal court which was subsequently dismissed for lack of subject matter jurisdiction. *Koffski,* 241 Ill. App. 3d at 481.

We note that defendant has failed to provide a complete record on appeal regarding the claim that plaintiffs' complaint is barred by section 13—217. As we stated earlier, it is the appellant's burden to provide a sufficient record on appeal and, in the absence of such a record, the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis. *Foutch,* 99 Ill. 2d at 391-92. Therefore, we deem this argument to be waived on appeal. However, assuming *arguendo* that this issue was not waived, defendant's claim is not well founded. We believe the above cases are inapposite to the case *sub judice.* First, we disagree with defendant that plaintiffs' cause of action was dismissed by the federal court for lack of jurisdiction. Furthermore, defendant, on its own motion, transferred the case to federal court, which, under section 1441 of the United States Code, required defendant to plead that the federal court had jurisdiction of the claim. 28 U.S.C. § 1441 (1994). Section 1441, which governs removal of actions, provides in pertinent part:

> "(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. ***

(b) Any civil action of which the district courts have original jurisdiction *founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable* without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought." (Emphasis added.) 28 U.S.C. §§ 1441(a), (b) (1994).

The congressionally mandated procedures for removal are set out in 28 U.S.C. § 1446(a) and require:

"(a) [D]efendant or defendants desiring to remove any civil action *** shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal ***." 28 U.S.C. § 1446(a) (1994).

Thus, defendant's argument that the trial court dismissed the case for lack of jurisdiction is inconsistent with defendant's conduct of transferring the case to federal court based on federal jurisdiction.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNULTY, P.J., and GORDON, J., concur.