**Robert HINDS, Plaintiff–Appellee,**

v.

**TITAN WHEEL INTERNATIONAL, INC., Defendant–Appellant.**

**No. 01–5185.**

United States Court of Appeals, Sixth Circuit.

Sept. 4, 2002.

Before BOGGS and BATCHELDER, Circuit Judges; and STEEH, District Judge.*

PER CURIAM.

In this civil contract action, Titan Wheel International, Inc. (Titan) appeals the denial of its motion for judgment as a matter of law, or in the alternative for a new trial, or in the alternative for *remittitur* of the jury award. We affirm the district court's determination, and leave the jury verdict and award undisturbed.

## I

Robert Hinds worked as the president of Dico Tire Company. In late 1993, when he was 63 years old, Titan bought Dico. Hinds continued for a short period as the president of Dico, reporting to a Titan supervisor. The Titan board of directors decided to remove Hinds from his job. In December 1993, Mr. Taylor, the president and CEO of Titan, told Hinds that he would be removed. Hinds informed Taylor that he was 63 years old, had a family, and would have a great deal of trouble finding new work. Taylor then proposed that Hinds sign a waiver of his right to sue Titan for age discrimination. In return, Taylor gave Hinds his choice of exit plans: a severance package which gave Hinds six weeks of pay, or a consulting agreement, which was an open-ended agreement granting Hinds a salary of $55,000 per year. The consulting agreement could be terminated by 90 days' notice, given in writing, by either party. Without notice of termination, the agreement renewed yearly.

Hinds signed the age discrimination waiver, and opted for the consulting agreement. He began work under the agreement in February 1994, and gave written reports to Russell Ashe, Taylor's assistant. Hinds received two payments, covering four weeks, under the contract. However, Ashe then informed Hinds that he would no longer be paid on a bi-weekly basis; rather, payment under the consulting contract would be on a per-project basis. Hinds was told to fill out a time card, and when his time on a project reached 80 hours, to submit that card for payment. Hinds protested the change in payment policy, but accepted payment under the new system. In June, Ashe told Hinds that Titan would not forward more work to him, because of a plant shutdown. Ashe informed Hinds that after the shutdown more work might be available. Hinds again acquiesced, but wrote a memo expressing his concern about not being given work, since the consulting arrangement was his only source of income. The contract was not terminated, but no further projects were given to Hinds. Hinds's further inquiries about the contract were largely ignored.

* The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

Hinds then looked for other work, and attempted to start his own business as an independent salesman. The business was unsuccessful, and Hinds closed it in 1996, after sustaining large losses. In 1997, Hinds found work as a salesman for one of the companies that he had represented as an independent salesman. That contract lasted one year. He was then employed as a sales representative selling boxes for 16 months. He was last employed on June 30th, 1999. He has since been unable to find a job.

Hinds sued in Tennessee state court on January 27, 2000; Titan removed the case to federal district court on February 25, 2000. Jurisdiction was based on diversity. The trial court judge denied cross motions for judgment as a matter of law, and the case went to a jury. The jury found that Titan had breached the consulting contract, and awarded Hinds $75,000 in damages. Titan then appealed.

## II

### 1. Timeliness of Appeal

 As a threshold matter, Hinds claims that Titan's appeal was not timely, and that we therefore lack jurisdiction to hear this appeal. Judgment was entered in the case on November 21, 2000. Titan then had ten days after that date to move for judgment as a matter of law, or alternatively for a new trial. Fed.R.Civ.P. 50, 59. Titan moved for judgment as a matter of law, or in the alternative for a new trial, ten days later, on December 1, 2000. The district court denied this motion on January 5, 2001. Titan then had thirty days from the date of denial of its Rule 50 motion to appeal. Fed. R.App. P. 4(a)(1)(A), 4(a)(4)(A)(i). Titan filed its notice of appeal on February 1, 2001. The appeal was therefore timely.

### 2. Motion for Judgment as a Matter of Law at the Close of the Evidence

Hinds next asserts that Titan did not move for judgment as a matter of law at the close of all the evidence. Hinds asserts, based on the Sixth Circuit's decision in *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514 (6th Cir.1990), that a party who has failed to move for a directed verdict at the close of all the evidence cannot raise a question as to the legal sufficiency of the evidence on appeal. *Id.* at 1522. The record indicates that Titan *did* move for judgment as a matter of law at the close of the evidence. Counsel for Titan stated: "Before I forget, the defendant will renew it's [sic] motion under Rule 50 for judgment." He concluded his remarks to the judge "So, your honor, we would at this time ask for a judgment to be entered in the defendant's favor." The court heard the arguments, then noted: "Judgment in favor of the defendant is overruled."

### 3. Judgment as a Matter of Law / New Trial / *Remittitur*

The district court denied Titan's motion for judgment as a matter of law or for a new trial, or for *remittitur* of the damage award. We review the denial of a motion for judgment as a matter of law *de novo*, and the denial of motions for a new trial or *remittitur* for abuse of discretion. *Williams v. Nashville Network*, 132 F.3d 1123, 1130 (6th Cir.1997) (judgment as a matter of law); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (*remittitur*); *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 818–19 (6th Cir.1999) (new trial).

### a. Judgment as a matter of law and refusal to instruct the jury on certain defenses.

A motion for judgment as a matter of law should be granted only if there is no

legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. *Pouillon v. City of Owosso,* 206 F.3d 711, 719 (6th Cir.1999). We therefore examine the contract at issue, to see whether its terms compel a decision in favor of Titan.

■ Titan first argues that the district court erred in submitting the breach-of-contract theory to the jury. Titan asserts that no rational factfinder could have found for Hinds, because the contract did not grant Hinds a bi-weekly salary. Titan's argument is that the contract must be interpreted to mean that Hinds would be paid on a project-by-project basis because, under the heading of "Appointment as Consultant," the contract states that Hinds would do work "as directed." If the contract only required that Hinds be paid on a per-project basis, then Titan would not have breached the contract by failing to pay him his salary. Titan did not give Hinds more projects after the plant shutdown, and therefore, would have owed him no money.

We disagree with this construction of the contract. Titan's interpretation ignores other portions of the contract, governing Hinds's remuneration, which clearly state that Hinds was to be paid a fixed amount bi-weekly. The contract is susceptible to the interpretation that the jury favored: that Hinds was entitled a salary under the contract, that the contract could only be terminated with 90 days notice, and that Titan did not properly terminate the contract, and breached by failing to pay the salary.

Titan next argues that even considering the evidence in the light most favorable to Hinds, a reasonable jury would have been compelled to find in Titan's favor because (1) there was a novation or modification of the contract; (2) Hinds waived his right to be paid bi-weekly; (3) Ashe orally termi-

nated the contract in the summer of 1994; and (4) Hinds was unavailable to do work for Titan after he began his new business.

■ The evidence, viewed favorably to Hinds, shows that a reasonable jury could have found to the contrary. Titan's novation argument fails; the elements of a novation are (1) a previous valid obligation; (2) subsequent agreement by both parties to the new contract; (3) extinguishment of the old contract; and (4) validity of the new contract. *Aluminum Co. of America v. Home Can Mfg. Corp.,* 134 Ill.App.3d 676, 89 Ill.Dec. 500, 480 N.E.2d 1243, 1248 (1985). Hinds protested the change in terms, both orally and in writing. A reasonable jury could have found that Hinds did not agree to the new contract; there is no evidence of extinguishment of the old contract or of an intent to create a new one.

■ Similarly, a reasonable jury could have found for Hinds on the issue of waiver. Titan's argument is that Hinds must have waived his right to a bi-weekly salary, because he accepted money under the per-project system. However, the contract contains a waiver clause, stating that waiver of any of the rights granted in the contract does not constitute a permanent waiver of the right. The jury could, and did, reasonably find that Hinds's acquiescence in the changed terms of payment was not a permanent waiver, but that he acceded to Titan's unilateral change because he had no choice and needed to be paid.

■ As for oral termination and availability, on both issues the jury verdict was supported by the evidence. Hinds testified that the contract was never terminated, that he attempted to meet with Titan employees to get more work, and that he regarded the contract as his sole source of income. As for availability, Hinds testified

that he would have been available for Titan work, even after he had started his business. He testified that he would have preferred that secure and familiar work to the grueling task of attempting to build a business in his mid-sixties. There is nothing inherently unbelievable or demonstrably untrue about this testimony. A reasonable jury could and did conclude that the contract was not terminated and that Hinds was available to perform under the contract.

■ Titan also appeals the district court's refusal to give a jury instruction on the defense of laches. We review the refusal to give a jury instruction for abuse of discretion. *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir.2000). An abuse of discretion has occurred when we have a definite and firm conviction that the trial court committed a clear error of judgment. *Ibid.* A refusal to submit an instruction to the jury is reversible if: (1) the refused instruction was correct as a matter of law; (2) the instruction was not covered by other charges; and (3) the failure to instruct impaired the requesting party's theory of the case. *Ibid.*

■ The district court properly refused the instruction. Here, the requested instruction was incorrect, since the defense of laches was inapplicable. Laches is an equitable remedy, available only when the party asserting laches can (1) show prejudice or hardship resulting from the plaintiff's delay in bringing suit, and (2) demonstrate that the delay induced the defendant to adversely change his position. *Cannella v. Village of Bridgeview*, 284 Ill. App.3d 1065, 220 Ill.Dec. 482, 673 N.E.2d 394, 398 (1996). When a claim is not barred by the statute of limitations, laches is disfavored, and will only be available if the court finds special conduct or circumstances justifying the remedy. *Ibid.*

■ The Illinois statute of limitations on contract actions is ten years. 735 Ill. Comp. Stat. § 5/13–206 (West 1992). Hinds filed his suit within ten years of late 1994, when Titan stopped paying him altogether. Titan did not adversely change its position in the interim. Titan argues that we should apply the doctrine of laches to these facts because the memory of its witnesses had faded with time. This is no uncommon occurrence or adverse change in position. Titan's witnesses were able to remember and testify to the relevant events. We do not think it wise to allow laches to block a suit that is well within the statute of limitations on the abstract principle that memories fade over time. We therefore conclude that the district court did not abuse its discretion by refusing the instruction.

**b. Motion for a new trial.**

■ In the absence of undue passion and prejudice on the part of the jury, we review for abuse of discretion a district court's refusal to grant a new trial based on excessive damages or a *remittitur. Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 424 (6th Cir. 1999). We, like the district court, may not disturb a jury award unless it is against the clear weight of the evidence as a whole. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 818 (6th Cir.1999). To be reduced, the award must be (1) beyond the range supportable by proof, (2) so excessive as to shock the conscience, or (3) the result of a mistake. *Leila Hosp. and Health Ctr. v. Xonics Med. Sys., Inc.*, 948 F.2d 271, 278 (6th Cir.1991).

■ The jury awarded Hinds $75,000. Titan suggests, incongruously, that because Hinds asked the jury for more money, $174,354.74, the jury's verdict for less money was against the clear weight of the evidence. The district court properly de-

nied Titan's motion for a new trial. The jury verdict was firmly within the range supported by the evidence. The jury could have performed any number of reasonable calculations to arrive at their result, especially given the fact that they had to determine how much credit to grant Titan because of other jobs that Hinds was able to find. There is no evidence that the jury's verdict was outside of the supportable range, was excessive, or was mistaken. We therefore decline to disturb the jury verdict.

■ Titan also claims that it should have been granted a new trial because the verdict was the result of passion or prejudice by the jury. Titan has two complaints: first, that Hinds improperly offered evidence of tort damages, and second, that evidence describing Hinds's failed business was improperly before the jury. This evidence, Titan asserts, improperly inflamed the jury.

Neither argument has merit. Hinds's complaint originally included tort claims for fraud and negligent misrepresentation. Halfway through trial, the court granted Titan's renewed motion for judgment as a matter of law on the tort claims, and those claims were not submitted to the jury. The evidence describing Hinds's failed attempt to build a business following his discharge by Titan was directly relevant to the issue of mitigation.

We disagree that the only reason this information was before the jury was to inflame and prejudice the jury against Titan. We therefore find no abuse of discretion in the district court's decision to refuse a new trial.

**c. *Remittitur*.**

■ Finally, Titan argues that the trial court should have applied *remittitur* to reduce the damage amount. We review a denial of *remittitur* for abuse of discretion.

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001). In determining *remittitur*, courts look to (1) the wrongfulness of the conduct, (2) the disparity between the harm and the amount of the award, and (3) a comparison with awards granted in other similar cases. *BMW of North America, Inc., v. Gore*, 517 U.S. 559, 574–75, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Here, there is no disparity at all between the award of damages and the harm done. We therefore conclude that Titan's motion for *remittitur* was properly rejected.

### III

For the foregoing reasons, the judgment of the district court and the jury verdict are AFFIRMED.